[Civ. No. 54546. Second Dist., Div. Four. Mar. 20, 1979.]

CHARLES F. JONES, JR., et al., Plaintiffs and Appellants, v.
QUEEN OF THE VALLEY HOSPITAL et al.,
Defendants and Respondents.

## COUNSEL

Gruber & Kelman and Gerald Goldfarb for Plaintiffs and Appellants.

Hagenbaugh & Murphy, William D. Stewart, Neil R. Gunny, Horvitz, Greines & Poster and Ellis J. Horvitz for Defendants and Respondents.

## OPINION

**KINGSLEY, Acting P. J.**—Plaintiffs appeal from a summary judgment adverse to them in an action for wrongful death. We reverse.

On the evening of June 22, 1975, plaintiffs' 19-month-old son developed a rash and a high fever. They took the child to defendant hospital where

he was examined by defendant doctor. The doctor diagnosed the condition as "flu" and told plaintiffs to take the child home and consult their family doctor in the morning. The next morning the child's condition had become worse and plaintiffs returned to the hospital with him. By the time they reached the hospital, the child had died of meningococcemia. The hospital personnel did not tell plaintiffs the cause of death but, later that day, after consulting their family doctor, they were told the cause and that doctor expressed concern over the quality of service rendered by defendants. In September of 1975, plaintiffs consulted a firm of attorneys about an action against defendants. That firm, after examining the hospital records, advised plaintiffs that they had no cause of action. The plaintiffs, in early 1976, consulted another firm of attorneys who, after submitting the hospital records and the nature of the death to a physician, advised plaintiffs that, in their opinion, a cause of action did exist. This action, filed on January 20, 1977, followed.

On those facts, the trial court granted defendants a summary judgment based on the statute of limitations from which judgment plaintiffs have appealed. We reverse.

The applicable statute is section 340.5 of the Code of Civil Procedure which, in pertinent part, reads as follows: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."

The Supreme Court in *Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93 [132 Cal.Rptr. 657, 553 P.2d 1129], interpreted that provision as follows (at pp. 96-97): ". . . it had been clear that the limitations period did not commence until the plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence." Further saying (at p. 101): "The applicable principle has been expressed as follows: 'when the plaintiff has notice or information of circumstances to put a reasonable person *on inquiry,* or *has the opportunity to obtain knowledge from sources open to his investigation* . . . the statute commences to run.'" (Italics in original.)

■ The issue before us, thus, is whether plaintiffs knew, or by reasonable inquiry should have known, prior to January 20, 1976, that

defendants were guilty of a *negligent* misdiagnosis. In support of the judgment, defendants rely on three cases, all antedating *Sanchez,* for the proposition that the statute began to run when, on June 23, 1975, the plaintiffs knew of the misdiagnosis. We conclude that none of those cases support the argument here made. In *Hemingway* v. *Waxler* (1954) 128 Cal.App.2d 68 [274 P.2d 699], the plaintiff was aware, within a few days after she had been told that she had suffered only a torn ligament, that the doctor has misread the X-rays, which clearly showed a fracture. In *DeVault* v. *Logan* (1963) 223 Cal.App.2d 802 [36 Cal.Rptr. 145], plaintiff again was told, shortly after defendant had misdiagnosed her injury, that X-rays showed a serious fracture of her hip. In *Tell* v. *Taylor* (1961) 191 Cal.App.2d 266 [12 Cal.Rptr. 648], plaintiff knew of a misdiagnosis over two years before she filed suit. Insofar as those cases seem to place the starting of the statute of limitations on mere knowledge of misdiagnosis, they must be deemed to have been overruled by *Sanchez,* which requires knowledge of need of inquiry of negligence. In addition, the misdiagnosis involved in those cases was of a nature such as to charge even a layman with knowledge that the misdiagnosis was negligent.

As an alternative, defendants contend that the statute began to run in September of 1975, when the defendants consulted the first firm of attorneys. We reject that contention. On the contrary, we conclude that consultation, and the advice then given, satisfied the requirement of a reasonable inquiry. A party who seeks professional advice as to possible malpractice and is told that none had occurred is entitled to rely on that advice. Plaintiffs were under no obligation to, and the public interest militates against, filing what they had every reason to believe would be a false lawsuit. That plaintiffs, still concerned over the death of their son, later sought further advice does not, retroactively, cast on them any onus for following the first advice.

It follows that the record does not support the conclusion of the trial court that, as a matter of law, plaintiffs had delayed filing their action for over one year from the time that they reasonably should have known not only that defendants were guilty of a misdiagnosis but that that diagnosis was negligent.

The judgment is reversed.

Jefferson (Bernard), J., and Alarcon, J., concurred.

A petition for a rehearing was denied April 11, 1979, and the petition of respondent Queen of the Valley Hospital for a hearing by the Supreme Court was denied May 17, 1979. Clark, J., Richardson, J., and Manuel, J., were of the opinion that the petition should be granted.