[Civ. No. 68461. Second Dist., Div. Three. Jan. 26, 1984.]

RICK BARIGHT, Plaintiff and Appellant, v.
KEN WILLIS, Defendant and Respondent.

306

**COUNSEL**

Jones & Barnett and Burt Barnett for Plaintiff and Appellant.

Haight, Dickson, Brown & Bonesteel, Roy G. Weatherup, William J. Sayers, Stephen D. Flaherty and Gregory A. Bastian for Defendant and Respondent.

OPINION

ARABIAN, J.—

### INTRODUCTION

Plaintiff appeals from a judgment of dismissal following an order sustaining without leave to amend a general demurrer to his second amended complaint. The sole question presented by this appeal is whether plaintiff's legal malpractice action against respondent is barred by the statute of limitations (Code Civ. Proc., § 340.6). We conclude it is a question of fact and reverse the judgment of dismissal.

### STATEMENT OF FACTS

Plaintiff's second amended complaint discloses the following express and reasonably inferred facts: Plaintiff, Rick Baright, retained respondent, Ken Willis, to represent him as his attorney in an action to recover all damages provided by law for the injuries he suffered in a September 28, 1976, accident. Respondent timely filed plaintiff's workers' compensation claim, but negligently failed to file a personal injury action against nonemployer tortfeasors responsible for plaintiff's injuries. On September 28, 1977, the relevant one-year statute of limitations barred plaintiff's third-party claims. Plaintiff had inquired of respondent whether any lawsuit other than a worker's compensation action could be filed on his behalf and respondent had advised plaintiff that no other lawsuit could be filed.

On November 14, 1979, plaintiff became dissatisfied with respondent's representation in his workers' compensation action and substituted Attorney Arthur Jaffee in place of respondent. Plaintiff asked Jaffee if any lawsuit other than a workers' compensation claim could be filed to compensate him for the injuries suffered in the accident. Jaffee advised plaintiff that no other lawsuit could be filed on his behalf.

Plaintiff became dissatisfied with Jaffee's representation and on September 3, 1981, substituted Attorney Randolph Kramer to represent him in the worker's compensation matter. Shortly thereafter, Attorney Kramer advised plaintiff that a personal injury action could have been filed against nonemployer third parties responsible for his injuries, but that such action was then barred by a one-year statute of limitations. Kramer also advised plaintiff that he might have a malpractice action against respondent for failing to file the third-party action.

Plaintiff was "totally ignorant and unaware of any legal right on his part to file a personal injury action against the non-employer tortfeasors" until

Kramer advised him of that right. He had relied on the advice given him by respondent, and confirmed by Jaffee, that he had no right to pursue any action other than his worker's compensation action.

The original complaint in this malpractice action was filed on October 15, 1981, approximately six weeks after plaintiff discovered through Kramer that respondent was negligent in failing to file a third-party lawsuit before it was barred by limitations.

## DISCUSSION

In *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421], the Supreme Court held that a legal malpractice action accrued when the plaintiff discovered or should have discovered his cause of action. That holding left open-ended liability for legal malpractice because an attorney's error might not be discovered until some indefinite time in the future. (*Id.*, at pp. 192-193.) In order to relieve the increased burden *Neel* placed on the legal profession, the Legislature enacted Code of Civil Procedure section 340.6, effective January 1, 1978. That section provides the limitations period for legal malpractice is one year after plaintiff discovers or should have discovered facts constituting the malpractice or four years from the actual date of the wrongful act or omission, whichever occurs first. The periods are tolled, *inter alia,* during the time the attorney continues to represent the plaintiff regarding the "specific subject matter" in which the malpractice occurred. (See *Krusesky v. Baugh* (1982) 138 Cal.App.3d 562, 565-566 [188 Cal.Rptr. 57]; *Bell v. Hummel & Pappas* (1982) 136 Cal.App.3d 1009, 1015 [186 Cal.Rptr. 688].)

Although section 340.6 was enacted after respondent's alleged malpractice occurred (when the statute of limitations on plaintiff's third-party claims expired), if plaintiff discovered or should have discovered the facts constituting his malpractice action only after the effective date of section 340.6, it is that statute which affects this lawsuit. (See *Brown v. Bleiberg* (1982) 32 Cal.3d 426, 437 [186 Cal.Rptr. 228, 651 P.2d 815].)[1]

However, insofar as section 340.6 imposes a four-year outside limit on the period after an attorney's wrongful act or omission in which to bring a malpractice action, the statute may not be applied retroactively to wipe out a plaintiff's claim. (See *Brown v. Bleiberg, supra,* 32 Cal.3d at p. 437;

---

[1]In the unlikely event plaintiff discovered or should have discovered facts constituting the malpractice prior to January 1, 1978, the effective date of section 340.6, the two-year discovery rule of its predecessor limitations statute (Code Civ. Proc., § 339, subd. 1) is applicable. (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d at pp. 182, 190.)

*Krusesky* v. *Baugh, supra,* 138 Cal.App.3d at pp. 566-567.) Although the Legislature may restrict the period of limitations on a pending claim, a plaintiff must be given a reasonable time in which to sue. (*Ibid.*)

■ A prospective application of section 340.6 in this case requires a holding that the four-year limitation period of that statute does not bar plaintiff's malpractice action. That result may be reached on either of two grounds. First, the complaint in this action was filed less than four years after the effective date of section 340.6. (*Krusesky* v. *Baugh, supra,* 138 Cal.App.3d at p. 567; see *Brown* v. *Bleiberg, supra,* 32 Cal.3d at p. 437; *Scott* v. *County of Los Angeles* (1977) 73 Cal.App.3d 476, 483 [140 Cal.Rptr. 785]; *Niagara Fire Ins. Co.* v. *Cole* (1965) 235 Cal.App.2d 40, 43 [44 Cal.Rptr. 889].) Secondly, the period of limitations was tolled during the time respondent continued to represent plaintiff regarding "the specific subject matter in which the alleged wrongful act or omission occurred." (Code Civ. Proc. § 340.6, subd. (a)(2).)

■ Respondent argues, however, that after the statute of limitations on plaintiff's third-party lawsuits expired on September 28, 1977, the *only* remaining "specific subject matter" of the attorney-client relationship between plaintiff and respondent was plaintiff's workers' compensation claim. Therefore, respondent urges, the tolling provision of subdivision (a)(2) of section 340.6 would not apply to a malpractice action concerning plaintiff's lost nonemployer third-party claims. According to respondent's self-serving and misguided reasoning, the four-year limitation period of section 340.6 expired before October 15, 1981, the date on which plaintiff's malpractice action against respondent was filed. We do not agree.

Accepting as true, as we must, plaintiff's allegation that he retained respondent to recover *all damages provided by law* for the injuries he suffered in the accident, it is manifest that the "specific subject matter" of their agreement encompassed not only plaintiff's workers' compensation claim, but also any third-party lawsuits plaintiff may have had against nonemployer parties responsible for his injuries.

Were we to adopt the meaning of "specific subject matter" as respondent would define it, a negligent attorney could elude responsibility for malpractice in allowing the expiration of a limitation statute by simply avoiding being discharged for one year thereafter. Such an interpretation of the statute insults logic and the clear meaning and purpose of section 340.6.

■ Statutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the Legislature. (*City of Costa Mesa* v. *McKenzie* (1973) 30 Cal.App.3d 763, 770 [106

Cal.Rptr. 569].) Thus, the courts will construe a statute with a view to promoting rather than defeating its general purpose and the policy behind it. (*Ibid.*) ■ A construction of the words "specific subject matter" which includes plaintiff's third-party tort claims serves both the purpose and policy of section 340.6.

■ The question remains, however, whether plaintiff's malpractice action is barred by the one-year discovery rule of section 340.6. ■ We note first that the tolling provision of section 340.6, subdivision (a)(2), applies to both the one-year and four-year provisions of the statute. (2 Witkin, Cal. Procedure (2d ed. 1983 Supp.) Actions, § 331C, p. 157.) ■ Thus, November 14, 1979, the date on which plaintiff substituted Attorney Jaffee for respondent in his workers' compensation action, is likely the first date on which it could be said that plaintiff either discovered or should have discovered the facts of his malpractice cause of action (but see fn. 1, *ante*).

The trial court sustained respondent's demurrer to plaintiff's second amended complaint on the following ground: "Plaintiff was aware that he had a possible claim against a third party and inquired of his new attorney, Mr. Jaffee, whether he had and was advised by Mr. Jaffee that no other lawsuit could be filed in his behalf. . . . Thus in November, 1979, plaintiff knew that it was too late to file such a lawsuit [and] [t]he one year statute began to run from that date."

The trial court's ruling indicates that it disregarded plaintiff's allegation that he "was totally ignorant and unaware of any legal right on his part to file a personal injury action against the non-employer tortfeasors . . . until early September, 1981, [when] Mr. Kramer informed [him] that said right had existed until the running of the statute of limitations. . . ." Apparently, the trial court also ignored plaintiff's allegation that "[u]ntil being so informed by Mr. Kramer, [he] had relied upon the advice and information provided him by defendant, and confirmed by Mr. Jaffee, that he had no right to pursue an action other than the worker's compensation matter."[2]

■ It is well settled that "[i]n assessing the sufficiency of a complaint against a general demurrer, we must treat the demurrer as admitting all

---

[2] Respondent's innovative argument that Jaffee was the "agent" of plaintiff, and therefore Jaffee's "knowledge" was imputable to plaintiff, lacks any basis in law or fact. First, since Jaffee, like respondent, erroneously advised plaintiff that no action other than the workers' compensation action could be filed for the injuries he suffered in the accident, Jaffee obviously had *no* knowledge of the facts of respondent's malpractice which could be imputed to plaintiff. Secondly, if such a concept of principal-agent responsibility were to be found in these circumstances to start the statute of limitations running, a client who suffered the malpractice of a first attorney and then had the misfortune to seek the advice of a second incompetent attorney would be twice punished without any fault or lack of diligence on his own part. That, of course, is not and should not be the law.

material facts properly pleaded. [Citations.]'" (*Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357].) ▆ Moreover, "'a demurrer on the ground of the bar of the statute of limitations does not lie where the complaint merely shows that the action may have been barred. It must appear affirmatively that, upon the facts stated, the right of action is necessarily barred.' [Citations.]" (*Vassere* v. *Joerger* (1938) 10 Cal.2d 689, 693 [76 P.2d 656]; *Valvo* v. *University of Southern California* (1977) 67 Cal.App.3d 887, 895 [136 Cal.Rptr. 865].)

At bench, plaintiff pled belated discovery of the facts constituting his malpractice cause of action. ▆ "'[T]he question of when there has been a belated discovery of the cause of action, especially in malpractice cases, is essentially a *question of fact . . .* [and] [i]t is only where reasonable minds can draw but one conclusion from the evidence that the question becomes a matter of law.' [Citations.]" (*Brown* v. *Bleiberg, supra,* 32 Cal.3d at p. 436, italics added; *Kite* v. *Campbell* (1983) 142 Cal.App.3d 793, 803 [191 Cal.Rptr. 363]; *Call* v. *Kezirian* (1982) 135 Cal.App.3d 189, 196 [185 Cal.Rptr. 103].) Further, "where there is a professional relationship, the degree of diligence in ferreting out the negligence for the purpose of the statute of limitations is diminished. [Citation.]" (*Call* v. *Kezirian, supra,* 135 Cal.App.3d at p. 196; see *Kite* v. *Campbell, supra,* 142 Cal.App.3d at p. 803.)

▆ Therefore, unless plaintiff's second amended complaint shows on its face that in the exercise of due diligence plaintiff should have earlier discovered respondent's alleged negligence and failed to do so, the issue whether plaintiff was aware of his legal right to have nonemployer third-party lawsuits filed on his behalf is *a question of fact* and the demurrer should not have been granted.

Respondent, however, argues that the statute of limitations is not tolled by belated discovery of legal theories, as distinguished from belated discovery of *facts,* analogizing this case to *McGee* v. *Weinberg* (1979) 97 Cal.App.3d 798 [159 Cal.Rptr. 86]. In *McGee,* a former wife sued the attorney who had represented her years before in a divorce action. She alleged that in preparing the' stipulation and judgment, he had failed to include a provision ordering her former husband to maintain her as the irrevocable beneficiary of his life insurance policy. The *McGee* court held for the errant attorney on the ground the statute of limitations was not tolled by the former wife's belated discovery of legal theories, as distinguished from a belated discovery of facts constituting the malpractice. The court observed that the former wife had knowledge of the facts giving rise to the malpractice action when, upon the death of her former husband, she failed to receive any insurance proceeds. She had every opportunity then to explore that fact

and consult an attorney. Therefore, invoking the "inquiry" rule of *Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93, 101 [132 Cal.Rptr. 657, 553 P.2d 1129], the court held the statute of limitations began to run no later than the time the former husband died. The former wife had actual and constructive knowledge then of her cause of action even though it did not occur to her at that time to consult another attorney. (*Id.*, at pp. 800-804.)

We are not persuaded by respondent's analogy to *McGee*. Despite respondent's protestations to the contrary, we agree with plaintiff that the circumstances of the instant case are instead analogous to *Call* v. *Kezirian, supra,* 135 Cal.App.3d 189, in which the court held that it was a question of *fact* whether the parents of a Downs Syndrome child should have realized earlier that amniocentesis would have revealed the condition. (*Id.*, at p. 199.)

This case is also analogous to *Krusesky* v. *Baugh, supra,* 138 Cal.App.3d 562, in which the court held that in light of the fact plaintiff was advised by her divorce lawyer that she had no right to her former husband's military retirement pension benefits, she was unaware of her loss until she learned of her rights eleven years later when consulting another attorney on a different matter. (*Id.*, at pp. 565, 567.) The court noted that plaintiff's belated discovery of her rights to her former husband's military pension "was factual, and was the necessary predicate to her discovery of the negligence theory of liability she assert[ed] in her action against [the attorney]." (*Id.*, at p. 567, fn. 6.)

In the case at bench, plaintiff belatedly discovered the *fact* that respondent could have filed a personal injury lawsuit against nonemployer third parties for his injuries, but by that time the actions were barred by the statute of limitations. Such factual discovery by plaintiff was the necessary predicate to his discovery of the legal malpractice theory he asserts in the instant lawsuit. The ultimate question, however, is whether plaintiff through the use of reasonable diligence should have discovered those facts more than one year before he filed his malpractice action. The answer depends on whether he had notice of circumstances sufficient to put a reasonable person on inquiry or had the opportunity to obtain knowledge from sources open to his investigation. (*Sanchez* v. *South Hoover Hospital, supra,* 18 Cal.3d at p. 101; *Krusesky* v. *Baugh, supra,* 138 Cal.App.3d at p. 567; *Graham* v. *Hansen* (1982) 128 Cal.App.3d 965, 972 [180 Cal.Rptr. 604]; *McGee* v. *Weinberg, supra,* 97 Cal.App.3d at p. 803.)

In plaintiff's second amended complaint he alleged he asked each attorney with whom he consulted whether any lawsuits other than his workers' com-

pensation claim could be filed on his behalf. Apparently it is that fact which prompted the trial court to rule that, as a matter of law, plaintiff was aware of his cause of action when he consulted with Jaffee in November of 1979. However, plaintiff's mere inquiry whether such lawsuits could be brought does not necessarily imply knowledge. To the contrary, the repeated questioning of his attorneys implies a lack of legal sophistication on plaintiff's part. Moreover, a party who seeks professional advice regarding facts which might constitute malpractice is entitled to rely on the advice received. (*Jones* v. *Queen of the Valley Hospital* (1980) 90 Cal.App.3d 700, 703 [153 Cal.Rptr. 662]; see *Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 408 [163 Cal.Rptr. 711] ["Where, as in this case, plaintiffs consulted with professional engineers as to the source of their injury, they were entitled to rely upon that advice"]; see also *Krusesky* v. *Baugh, supra,* 138 Cal.App.3d at pp. 568-569 [To conclude plaintiff "acted unreasonably would in effect require a client to consult a second lawyer in every case for another opinion"].)

In *Jones* v. *Queen of the Valley Hospital, supra,* 90 Cal.App.3d 700, a case involving the medical malpractice statute of limitations (Code Civ. Proc., § 340.5), but which has facts remarkably similar to those in the instant case, the Court of Appeal reversed the trial court's grant of summary judgment for defendants. In that case, the parents of a child who died in June of 1975 as the result of a misdiagnosis brought a medical malpractice action in January of 1977. Plaintiffs had in September of 1975 consulted a law firm concerning an action against the physician and hospital and were advised they did not have a cause of action. In 1976 they consulted another firm of attorneys who advised them that a cause of action for medical malpractice did in fact exist. As a result of that advice, the parents filed a malpractice action against the doctor and hospital.

In reversing the trial court's grant of summary judgment for defendants, the Jones court stated: "[D]efendants contend that the statute [Code Civ. Proc., § 340.5] began to run in September of 1975, when the [plaintiffs] consulted the first firm of attorneys. We reject that contention. On the contrary, we conclude that consultation, and the advice then given, satisfied the requirement of a reasonable inquiry. *A party who seeks professional advice as to possible malpractice and is told that none has occurred is entitled to rely on that advice.* Plaintiffs were under no obligation to, and the public interest militates against, filing what they had every reason to believe would be a false lawsuit. That plaintiffs, still concerned over the death of their son, later sought further advice does not, retroactively, cast on them any onus for following the first advice." (*Jones, supra,* 90 Cal.App.3d at p. 703, italics added.)

■ In considering the sufficiency of plaintiff's second amended complaint, we are bound by the rule that on appeal from a judgment entered on demurrer, "'the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties.' [Citations.]" (*Glaire* v. *La Lanne-Paris Health Spa, Inc., supra,* 12 Cal.3d at p. 918; *Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 244-245 [74 Cal.Rptr. 398, 449 P.2d 462].) Guided by these principles, we have determined the judgment of dismissal in this case must be reversed.

## DISPOSITION

The judgment is reversed with instructions to the trial court to overrule the demurrer based on the statute of limitations. The parties shall bear their own costs on appeal.

Klein, P. J., and Lui, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 28, 1984.